KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant United States Attorney
California Bar Number 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>JESUS ACEVES-INIESTRA,<br><br>                Defendant. | Criminal Case No. 08CR0361-LAB<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**<br><br>**(1) COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS;**<br>**(2) DISMISS INDICTMENT DUE TO MISINSTRUCTION OF GRAND JURY**<br>**(3) SUPPRESS ANY STATEMENTS**<br>**(4) DISMISS INDICTMENT DUE TO INVALID DEPORTATION**<br>**(4) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**ALONG WITH UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY AND MOTION TO COMPEL FINGERPRINT EXEMPLARS.**<br><br>Date:      March 24, 2008<br>Time:     2:00 p.m.<br>Honorable: Larry A. Burns |

Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina M. McCall, Assistant United States Attorney and hereby files its Response and Opposition to Defendant's Motions and its Motion for Reciprocal Discovery. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF FACTS**

**A.   Defendant's Criminal and Immigration Record**

Defendant, Jesus Aceves-Iniestra, is a 19-year-old citizen of Mexico and a convicted felon. Defendant never had any legal permission to enter or remain in the United States. Despite a lack of permission, Defendant entered this country without inspection as a small child, and remained in this country as an undocumented, illegal immigrant. He attempted to murder a human being while awaiting the outcome of his application for a green card. That application was eventually denied.

Defendant was born in Tijuana, Baja California, Mexico on March 4, 1989. [Exh 1, Defendant's birth certificate.] Defendant's birth certificate lists his father as Silverio Aceves-Plascencia, born in Jalisco, Mexico, and 39 years of age at the time of Defendant's birth. The birth certificate lists Defendant's mother as Yolanda Iniestra-Garcia, born in Jalisco, Mexico, and 36 years of age. Defendant's baptismal certificate lists his name as Jesus Maldonado, child of Silverio Aceves and Yolanda Iniestra-Garcia. [Exh 2, baptism certificate.] The baptismal certificate also lists Defendant's place of birth as Tijuana, B.C., Mexico, on March 4, 1989. [Id.] Defendant's Mexican passport lists his place of birth as Tijuana, BCN, and his nationality as Mexican. [Exh 3, Defendant's Mexican passport.]

Defendant's mother, Yolanda, was born on December 3, 1965, in Jalisco, according to her Mexican passport. Defendant's mother's marriage certificate, issued June 20, 1998, shows she and her husband were born in Mexico and married in Los Angeles county. [Exh 4, Defendant's mother's marriage certificate.] Defendant's mother's previous marriage, to Jose Luis Maldonado, was dissolved by a court order in Los Angeles Superior court on April 20, 1998. Silverio Aceves-Plascencia became a naturalized United States citizen on June 19, 1996. [Exh 5, naturalization certificate.]

On March 1, 2001, Defendant filed an Application to Register Permanent Resident or Adjust Status, form I-485. [Exh 6, I-485.] The application stated that Defendant was born in Mexico on March 4, 1989, and arrived as an undocumented alien in September of 1989. After notifying Defendant of his obligation to submit his fingerprints to the government, and warning him that failure to appear for

1  fingerprinting may result in the denial of the application, the Department of Homeland Security denied
2  Defendant's application for permanent resident status. [Exh 7, denial of application.]
3       On January 25, 2005, Defendant and two other men tried to murder a human being with malice
4  aforethought. The three men tried to run over the victim using an automobile. When that attempt failed
5  to kill the victim, Defendant shot him with a firearm. An information was filed by the Los Angeles
6  District Attorney on April 25, 2005, charging the three men with attempted murder and assault with a
7  deadly weapon, with Defendant facing an enhancement for shooting the gun. [Exh 8, state court
8  records.] Even though Defendant was a juvenile at the time the crimes were committed, he was charged
9  as an adult. On October 24, 2005, Defendant was convicted of assault with a firearm on a person, in
10 violation of Penal Code § 245(a)(2) and participating in a street gang, and sentenced to a term of four
11 years and 8 months in prison. [Id.]
12       After Defendant completed his prison sentence, Immigration Judge Taylor ordered Defendant
13 removed to Mexico on January 7, 2008. [Exh 9, IJ order.] The basis for the removal order was
14 Defendant's crime of violence and moral turpitude, his alienage, and his lack of legal permission to enter
15 or reside in the United States.

16 **B.    Defendant's Apprehension**

17       On January 18, 2008, at around 10:00 a.m., United States Border Patrol Agents Dishman and
18 Amato responded to a call of three people crossing the international border from Mexico in an area of
19 Imperial Beach known as Whiskey Eight. This area is approximately two miles west of the San Ysidro
20 port and 50 yards north of the border fence. Whiskey Eight is an area commonly used for illegal border
21 crossings. When the agents arrived at Whiskey Eight, they saw three people riding north on bicycles.
22 When the three cyclists crossed Clearwater Road, they dropped the bicycles and tried to abscond on
23 foot. Agents Dishman and Amato chased and captured two of the cyclists, including Defendant, Jesus
24 Aceves-Iniestra. Other agents captured the third person. In the field, the agents conducted a brief
25 immigration inspection. Both individuals, including Defendant, admitted being Mexican citizens who
26 were present in the United States illegally and lacked proper documents to enter legally. All three
27 people were transported to the Imperial Beach Border Patrol station for processing.
28

1    After researching Defendant's history of criminal and immigration violations, the agents
2 informed Defendant that he was going to be prosecuted criminally, and that his administrative rights no
3 longer applied. The agents read the Miranda warnings to Defendant, who elected to answer questions
4 without an attorney present.

5    The Miranda warnings area explained on the post-arrest interview videotape, in English, a
6 language that Defendant is comfortable speaking, having lived in this country since he was a toddler.
7 The warnings are also expressly listed in the Record of Sworn Statement in Affidavit Form, which also
8 contains Defendant's responses to the questions the agents asked. [Exh 10.]  The agents conducting
9 the ten-minute post-arrest interview were wearing plain clothes, with no weapons visible, and Defendant
10 was not handcuffed during the interview. Defendant gave appropriate answers to the questions asked.
11 The interview took place about three hours after Defendant was apprehended in the field.

12    During the interview, Defendant gave evasive answers to questions about his citizenship and
13 place of birth. When asked where he was born, Defendant stated that he was raised in Los Angeles.
14 When asked whether he was born in the United States or Mexico, Defendant stated he was not sure.
15 Defendant indicated he lacked any documents to prove he was born in the United States, and that an
16 immigration judge had ordered him deported. Defendant admitted that he was convicted of assault with
17 a firearm, and that he received a sentence of four years and eight months. Defendant indicated that he
18 hopped over the border fence and entered without inspection on this occasion. Defendant made
19 arrangements with smugglers to enter the United States and planned to pay 20,000 to 25,000 once he
20 reached the Los Angeles area.

21    On February 13, 2008, a federal grand jury for the Southern District of California returned a one-
22 count Indictment against Defendant, charging him with being an alien who knowingly and intentionally
23 attempted to enter the United States without the consent of the Attorney General or the Secretary of
24 Homeland Security, after having been previously excluded, deported, or removed, in violation of Title
25 8 U.S.C. § 1326. The Indictment further alleged that Defendant was removed from the United States
26 subsequent to October 24, 2005, the date of his prior felony convictions.

27
28

# II

**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

**A.  THE GRAND JURY TRANSCRIPTS SHOULD NOT BE PRODUCED**

Federal Rule of Criminal Procedure 6(e)(2) provides that the matters occurring before the grand jury must not be disclosed, except for limited exceptions set forth in Rule 6(e)(3). Rule 6(e)(3)(E) allows the district court to authorize disclosure of a grand-jury matter at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. Defendant asserts that he has shown a particularized need for the grand jury transcripts. This Court should deny this motion, for Defendant has not met his burden to show a particularized need to overcome the secrecy of the grand jury proceedings.

There are very good reasons why the Federal Rules of Criminal Procedure provide for the secrecy of grand jury proceedings. The Supreme Court stated, in <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 681-682, n. 6 (1958), the reasons for grand jury secrecy:

> "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.'"

In <u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 441 U.S. 211 (1979), the Supreme Court set forth the standard for determining when the traditional secrecy of the grand jury may be broken:

> Parties seeking grand jury transcripts under Rule 6 (e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations, as it had in <u>Dennis</u>. For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation. Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

1 | 441 U.S. at 222.

In this case, there is no evidence that a ground may exist to dismiss the indictment because of matter that occurred before the grand jury. Defendant, in his post-arrest statement, made some very uncertain and evasive statements regarding his birthplace and nationality, as set forth in the partial transcript contained in his brief on page 3 ("I'm not sure [where I was born]." "I don't have nothing [documents to show birth in the United States])." "Probably, yeah [my parents could prove that I was born in the United States]."). Defendant's rap sheet contains references to Defendant's place of birth being Los Angeles, which is entirely self-serving hearsay taken from Defendant at face value by street-level law enforcement officers with no access to immigration records. Multiple hearsay assertions from Defendant come nowhere near grounds to dismiss the indictment. While the POB references in the rap sheet may be potentially exculpatory, they are far outweighed by much more credible evidence that is actually admissible in court. Defendant's unclear statements post-arrest about his citizenship and place of birth are also far outweighed by the evidence in his Alien file.

Compare the strength of the evidence of Defendant's alienage that has been produced from Defendant's Alien file and immigration proceedings to a few POB references in Defendant's rap sheet and Defendant's muddled post-arrest interview statements. First, Defendant's birth certificate, submitted by his family to try to obtain a green card for him, clearly indicates his place of birth as Tijuana, Baja California, Mexico. His baptismal certificate likewise indicates Defendant was born in Mexico. Throughout Defendant's immigration petitions, his place of birth is listed as Mexico. Defendant's Mexican passport indicates he is a Mexican citizen. Defendant, during his field interview in this arrest, indicated he was a Mexican citizen who had climbed the border fence to enter without inspection, since he had no documents allowing him to enter the United States. The immigration judge, following a hearing, found Defendant to be a removable alien. A check of immigration databases indicates that Defendant never had any lawful status in the United States. Defendant's petition to adjust his status to that of a lawful resident was denied.

The evidence overwhelmingly indicates that Defendant is not a United States citizen. Therefore, there has been an insufficient showing of a particularized need for the transcripts of the grand jury

proceedings to justify overcoming the necessary secrecy of the grand jury's functions. This motion should be denied.

**B.     THE GRAND JURY WAS NOT MIS-INSTRUCTED**

Defendant moves to dismiss the indictment against him for alleged errors in this Court's instruction of the grand jury panel. The United States explicitly incorporates by reference the briefing on this issue submitted in United States v. Bermudez-Jimenez, 07CR1372-JAH, and United States v. Martinez-Covarrubias, 07CR0491-BTM. This motion has been denied by each court that has considered it, and should also be denied in this case.

**C.     DEFENDANT'S STATEMENTS ARE ADMISSIBLE**

Defendant moves this Court for an order suppressing his post-Miranda statements because: (1) they were allegedly taken in violation of his Miranda rights; (2) the Government has allegedly not proved a knowing, voluntary and intelligent waiver of rights; (3) the Government has allegedly not shown that the statements were voluntary; and (4) the statements were allegedly taken in violation of the Vienna Convention  Additionally, Defendant seeks an evidentiary hearing on the admissibility of the statements, based solely upon a declaration filed by defense attorney David Peterson. As discussed below, Defendant's motions should be denied.

**1.     Standards Governing Admissibility of Statements**

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501, if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching").

Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. See id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low

intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted).  While it is possible for a defendant to be in such a poor mental or physical condition that he cannot rationally waive his rights (and  misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice.  See United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

**2.    Defendant's Motion Should be Denied Without a Hearing**

Contrary to Defendant's request, the Court should deny the motion to suppress without a hearing. Under Ninth Circuit precedent and Southern District Local Criminal Rule 47.1(g)(1), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant puts forth, in a declaration, sufficient facts to require a factual finding. United States v. Batiste, 868 F.2d 1089, 1098 (9th Cir. 1989) ("defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not required to hold an evidentiary hearing.").   "A hearing will not be held on a defendant's pretrial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue exists such that a hearing is required.'"  United States v. Howell, 231 F.3d 615, 621(9th Cir. 2000) (citations omitted).

Here, Defendant has failed to place any issue at factual dispute through a declaration, in clear opposition to Local Rule 47.1(g).  Defendant also fails to provide any factual support that a violation of Miranda occurred.  This Court should deny Defendant's motion to suppress the statements he made to officials on the day of his arrest.

Attorney Peterson's declaration, based solely upon watching a ten-minute video recording, does not satisfy Rule 47.1(g)(1).  Under Local Rule 47.1(g)(2), the declaration supporting a motion must set predicate facts and show "affirmatively that the declarant is competent to testify."  Finally, pursuant to Local Rule 47.1(g)(4), "[e]ach declarant . . . shall be made available for cross-examination at the hearing of the motion. . . ."  California Rule of Professional Conduct 5-210 prohibits an attorney from serving as a witness in his own case: "A member shall not act as an advocate before a jury which will hear

testimony from the member...." Because of this ethical prohibition on serving as a witness in this case, Attorney Peterson's declaration is invalid, and places no factual issue at dispute.

### 3. Defendant Was Properly Advised of His Miranda Rights, and Waived Them

Although the defense attorney transcribed part of the post-arrest interview where Defendant made unclear statements about his birthplace, he conveniently did not transcribe the portion of the interview where Defendant was clearly advised of his Miranda rights. In Exhibit 10, the court can review the warnings that the agents used before questioning Defendant. After receiving the warnings, although Defendant initially asked a question about a lawyer, then, without any further prompting by the agents, Defendant indicated that he would be doing time with or without a lawyer present, and that he was willing to speak with the agents about the immigration violation. The evidence, in the form of the post-arrest video recording and Exhibit 10, clearly shows that Defendant received and waived his Miranda rights. Thus, the motion to suppress statements on the basis of an alleged Miranda violation should be denied.

### 4. Defendant's Post-Miranda Statements Were Voluntary

Defendant does not provide any basis for which his post-arrest statements should be suppressed. The statements were voluntarily given.

In evaluating the voluntariness of post-arrest statements, courts ask "whether, considering the totality of the circumstances, the Government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988); see also United States v. Miller, 984 F.2d 1028, 1031 (9th Cir. 1993) (crucial question is whether the defendant's will was overborne when he confessed). The relevant circumstances include both the characteristics of the accused and the details of the interrogation. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). At a minimum, coercive police activity is "a necessary predicate" to finding a confession involuntary. Colorado v. Connelly, 479 U.S. 157, 167 (1986). A confession is voluntary if it is the "product of a rational intellect and a free will." Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir.1989) (quoting Townsend v. Sain, 372 U.S. 293, 307 (1963)). The crucial question is whether Defendant's will was overborne when he confessed. See United States v. Miller, 984 F.2d 1028, 1031 (9th Cir. 1988).

In the present case, there is no evidence to suggest that Defendant's statements were the result of any coercion or improper inducement. Defendant has provided no articulable facts in support of his claim that the statements made at the time of his arrest violated Miranda or were involuntary. Without specific supporting facts showing material facts in dispute, Defendant's motion should be denied without a hearing.

The circumstances of the post-arrest interview indicate that Defendant voluntarily gave the statement. First, the interview took place only three hours after Defendant was apprehended in the field. Second, the interview took place in a well-lit room at a Border Patrol station, with two plainclothes agents present, neither of whom were involved in apprehending Defendant. Third, Defendant was not handcuffed or visibly restrained during the interview. Fourth, the entire interview, including Miranda warnings, only took about ten minutes, and was videotaped. Fifth, Defendant's response, when asked to clarify whether he wished to speak with agents without an attorney present was "sure." Sixth, the interview was conducted in English, a language that Defendant is clearly comfortable speaking and understanding. Seventh, the agents did not raise their voice or threaten Defendant in any manner. In fact, they clarified questions for Defendant's benefit. Eighth, before the Miranda rights were given, Defendant was informed that he was being criminally prosecuted for an illegal entry. Nothing on the videotape remotely demonstrates that Defendant's statement was involuntary. For all of these reasons, the request to suppress Defendant's statements on voluntariness grounds should be denied.

### 4. The Vienna Convention Contains No Suppression Remedy

Defendant argues that his statements should be suppressed because they were allegedly taken in violation of the Vienna Convention's consular notification provision. The Ninth Circuit has clearly stated that even "assuming that some judicial remedies are available for the violation of Article 36 [of the Vienna Convention], the exclusion in a criminal prosecution of evidence obtained as a result of post-arrest interrogation is not among them." United States v. Lombera-Camorlinga, 206 F.3d 882, 885 (9th Cir. 2000) (en banc); see United States v. Rodriguez-Preciado, 399 F.3d 1118, 1130 (9th Cir. 2005). No intervening authority has clearly undercut this conclusion from the Ninth Circuit's prior cases in such a way that they are irreconcilable. Therefore, this Court should deny the motion to suppress Defendant's statements.

**D.     DEFENDANT'S DEPORTATION HEARING DID NOT VIOLATE DUE PROCESS**

Defendant moves to dismiss the Indictment, alleging a violation of due process at his removal hearing. Defendant argues that the immigration judge "failed to obtain a knowing an [sic] intelligent waiver of Mr. Aceves' appellate rights." Defendant also asserts that the immigration judge failed to advise him that he was eligible for relief under 8 U.S.C. 1182(h), also known as 212(h) relief, and 8 U.S.C. §1229c(e), voluntary departure.

Conveniently, defense counsel fails to mention one critical fact throughout his challenge to his deportation: Defendant was convicted of an aggravated felony, and is statutorily ineligible for relief from deportation. This glaring omission indicates that defense counsel is aware that this fact is fatal to his claims, yet chose to submit 18 pages of briefing on the issue of the lawfulness of the prior deportation.

**1.     Legal Standards**

"Because the underlying removal order serves as a predicate element of an illegal entry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004); see also United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987). An alien must demonstrate three things before he or she can collaterally attack a prior removal: "(1) exhaustion of available administrative remedies to seek relief from the deportation order; (2) improper deprivation of an opportunity for judicial review; and (3) fundamental unfairness of the underlying removal order." United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir 2006); see also 8 U.S.C. § 1326(d). A removal order is "fundamentally unfair" if (1) due process was violated by defects in the alien's removal hearing, and (2) the alien suffered prejudice as a result of the defects. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004); see also Pallares-Galan, 359 F.3d at 1095. Prejudice can only be demonstrated if Defendant shows that he had plausible grounds for relief from deportation. United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998).

**2.      Defendant Did Not Exhaust his Administrative Remedies**

Defendant participated in his removal hearing on January 7, 2008, only eleven days before he was arrested illegally re-entering the United States in this case. During that hearing, which was transcribed by defense counsel (and included as entry 12-8 on the docket for this case), the judge informed the group that each of them had a right to appeal the decision to a higher court. Each participant in the removal hearings was provided with a written notice of their appeal rights. At the conclusion of Defendant's individualized hearing, Defendant indicated that he would accept the deportation order and that he was not going to appeal the order to a higher court.

This appellate waiver was considered and intelligent. Rather than appealing the removal decision, Defendant chose to scale the international border fence during his illegal re-entry attempt. Defendant has not satisfied the first prong for a collateral attack: exhaustion of administrative remedies to seek relief from the deportation order. United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001.)

This is a classic case of failure to exhaust known remedies. See Noriega-Lopez v. Ashcroft, 335 F.3d 874, 879-80 (9th Cir. 2003) (where alien failed to challenge of sufficiency of proof of prior conviction on direct appeal, court would not consider it on collateral attack); United States v. Hinojosa-Perez, 206 F.3d 832, 836 (9th Cir. 2000) (holding that an alien who received notice of his right to file a motion to reopen immigration hearing and who failed to do so did not exhaust his administrative remedies); Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) ("Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter."). On this ground alone, Defendant's collateral attack on his deportation fails.

**3.      212(h) Does Not Provide Relief from Deportation for Defendant**

      **a.      Defendant was Statutorily Ineligible for 212(h) Due to His Aggravated Felony Conviction**

There was no error in not advising Defendant of any 212(h) relief available to him because he was not eligible for any waiver of relief due to his aggravated felony convictions. There was no due process violation in the immigration judge's failure to advise Defendant about relief from deportation to which he was not entitled.

> Subsection 1228(b), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that non-LPR aliens convicted of an aggravated felony are subject to expedited removal, without a hearing before an immigration judge ("IJ"), and are ineligible for any form of relief from removal, including relief under 8 U.S.C. § 1182(h) (also known as § 212(h) waiver). See 8 U.S.C. § 1228(b).

United States v. Gonzalez, 429 F.3d 1252 (9th Cir. 2005).

In United States v. Gonzalez, Gonzalez was a Mexican citizen who was brought to the United States illegally when he was three months old. 429 F.3d at 1254. Gonzalez's parents subsequently obtained permanent resident status, but Gonzalez never did. Id. In 1994, Gonzalez pleaded guilty to second-degree robbery, which was an aggravated felony. Id. In 1996, IIRIRA and AEDPA became effective, Gonzalez argued that § 1228(b)(5) should not apply retroactively to his aggravated felony conviction and that the underlying deportations violated his due process rights because, at the time of his guilty plea, he was eligible for discretionary relief under 8 U.S.C. § 1182(h), Immigration and Nationality Act ("INA") § 212(h). The Ninth Circuit found that Gonzalez was ineligible for 212(h) relief because of the 1996 amendments to §1228(b). Id. at 1258.

Like Gonzalez, Defendant is a Mexican citizen who was brought to the United States illegally as a very young child, and never obtained lawful resident status. Defendant's conviction for assault with a firearm upon a person qualifies as an aggravated felony for immigration purposes ( 8 U.S.C. § 1101(a)(43)(F)) and 1326 sentencing enhancement purposes (18 U.S.C. § 16(a)). United States v. Romero-Rendon, 220 F.3d 1159, 1163 FN3 (9th Cir. 2000); Aragon-Ayon v. INS, 206 F.3d 847 (9th Cir. 2000) ("It is undisputed that assault with a deadly weapon is included in the amended definition of 'aggravated felony' in INA § 101(a)(43)(F)."). Because of Defendant's aggravated felony conviction, 8 U.S.C. § 1228(b) makes him statutorily ineligible for 212(h) relief. Therefore, he was not entitled to have the immigration judge inform him of the relief to which he was not entitled, and there was no due process violation.

### b. Defendant Would Not Qualify for 212(h) Relief, Even if He Was Not Statutorily Barred from Seeking It

8 U.S.C. § 1182 (corresponding to INA section 212) addresses circumstances where an alien is inadmissible. Under Rule 212(h), a waiver of excludability will be granted where:

> (1) the alien is the spouse, parent or child of a citizen or lawful permanent resident; (2) the exclusion would result in extreme hardship to the citizen or

lawful resident relative; (3) the alien's admission would not be contrary to the national welfare, safety or security of the United States; and (4) the Attorney General exercises her discretion in the alien's favor.

Arce-Hernandez, 163 F.3d. at 563 (citing 8 U.S.C. § 1182(h)).

### 1. Defendant Has Not Established that His Removal Would Create Extreme Hardship for His Family

Assuming the validity of Defendant's unsupported representations in his motion, however, Defendant still cannot prevail on the issue of prejudice because he cannot meet the second element for Section 212(h) relief as his deportation would not result in "extreme hardship" to his family. As someone who has recently become an adult, served a substantial sentence in prison, was a member of a criminal street gang, and had no work history, it is difficult to imagine how Defendant's removal would cause his family extreme hardship. In fact, Defendant's family tried to sponsor him for a green card, indicating he relied on his family members, rather than the family members relying on Defendant.

The Ninth Circuit has held that a showing of "extreme hardship" requires "great actual or prospective injury" or "extreme impact" on the citizen family member, beyond the "common results of deportation." Arce-Hernandez, 163 F.3d at 564 (citing Shooshtary v. I.N.S., 39 F.3d 1049 (9th Cir. 1994); see United States v. Muro-Inclan, 249 F.3d 1180, 1184 (9th Cir. 2001). In Arce-Hernandez, 163 F.3d 559, 564, the court held that:

> The allegation that the wife suffers from poor health and would have difficulty working in Mexico, if true, would constitute hardship to a wife and her children, but we cannot say, as a matter of law, that these hardships would be extreme and beyond the common results of the deportation of a convict. Indeed, Arce-Hernandez describes the typical case of hardship that follows deportation of an alien whose citizen wife and children were all acquired after his illegal entry into the United States.

In Muro-Inclan, 249 F.3d at 1185, the Court also held that the hardships alleged by the appellant represented the common results of deportation and did not represent the type of additional evidence of extreme hardship beyond the normal deprivation of family support. Specifically, the Court noted that:

> Here, the only evidence submitted to show hardship is a brief, generalized declaration from Appellant's wife, who states that she needs his 'help in raising children and providing for them. I cannot provide everything they need without their father's help.' However, the record discloses that Appellant has been incarcerated for 10 out of the last 13 years.

Id. Finally, in Shooshtary, 39 F.3d at 1051, the Court found that no evidence was presented of extreme hardship "other than generalities about having to move his family elsewhere, anticipated difficulties

in finding work, and anticipated loss of friends. Such generalities are, of course, present when one moves to a new location." The Court specifically held that "generalities" set forth as evidence instead of "preciseness of proof" do not "meet the burden required to show extreme hardship." Id. In this case, Defendant has not proffered any specific hardship, or any generality about why his deportation would have caused extreme hardship. Therefore, he does not meet the requirements of 212(h) relief.

### 2. Defendant's Admission Would be Contrary to the National Welfare

Defendant also could not establish that his admission would not be contrary to the United States' welfare. His convictions, for assault with a deadly weapon, a firearm, and being a member of a criminal street gang, indicate that he is a danger to society. The Board of Immigration Appeals has found that assault with a deadly weapon is a crime involving moral turpitude. See In re Medina, 15 I. & N. Dec. 611, 612-14 (BIA 1976); In re Goodalle, 12 I. & N. Dec. 106, 107 (BIA 1967); In re G----R----, 2 I. & N. Dec. 733, 734-36 (BIA 1946) (holding that assault with a deadly weapon in violation of California Penal Code section 245 is a crime involving moral turpitude).

### 3. The Attorney General Did not Exercise Discretion in Defendant's Favor

At the time of Defendant's deportation hearing, the Attorney General did not exercise his discretion to allow Defendant to remain in the country. On the contrary, the documents in Defendant's alien file indicate that the government was well aware of Defendant's conviction for an aggravated felony and crime of moral turpitude, and was subject to deportation based on sections 101(a)(43)(F) of the INA and 8 U.S.C. 1182(a)(2)(A)(i)(I).

An alien may seek relief from deportation under § 245 of the INA, 8 U.S.C. § 1255. Section 245(a) provides that the Attorney General may, in his discretion, adjust the status of an alien inspected and admitted or paroled into the United States to that of an alien lawfully admitted for permanent residence if the alien meets three conditions: "(1) the alien applies for such adjustment, (2) he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." An alien seeking to adjust his or her status is assimilated to the position of an applicant for entry into the United States. Yui Sing Tse v. INS, 596 F.2d 831, 834 (9th Cir. 1979). Defendant did not meet these conditions at the time he was deported.

### A. Step 1: Defendant's Application for Adjustment Was Denied

Although Defendant applied for an adjustment in his immigration status in 2001, the application was denied before he appeared in the immigration proceedings, because Defendant failed to complete the application process. The plain language of § 245(a) requires that all requirements be met in order for an alien to obtain relief from deportation. Because all requirements must be met for an alien to adjust his status, the denial of Defendant's application for adjustment in his status rendered him ineligible for relief from deportation. INA § 245(a).

### B. Step 2: Eligibility and Availability of Immigrant Visa

First, Defendant fails to include any information concerning his eligibility for an immigrant visa. Second, even were he eligible, a visa would not have been immediately available to him at the time of his deportation. Section 203 of the INA, 8 U.S.C. § 1153, specifies the preference in which immigrant visas are allocated. For example, aliens who have received national acclaim for their athletic ability or who have achieved success as an outstanding professor or researcher will be allocated a certain percentage of immigrant visas. § 203(b)(1)(A-B). Defendant's criminal history and lack of exceptional work history or other qualifications makes it unlikely that an immigrant visa would be immediately available to him. While Section 203(a) provides for the allocation of immigrant visas that are family-sponsored, there is simply no evidence that an immigrant visa would have been immediately available to Defendant at the time he was deported.

In conclusion, Defendant's challenges based on Section 212(h) must fail for three reasons: (1) 212(h) was inapplicable to Defendant, since he was not an applicant for admission but an illegal alien who never had status in the United States and was being deported after committing a crime of moral turpitude; (2) Defendant cannot meet the prejudice requirement because he cannot show that at the time of his hearing his deportation would have caused extreme hardship to his family; and (3) Defendant also was ineligible for 212(h) relief because he could not meet all the requirements set out in Section 245 of the INA, 8 U.S.C. § 1255. For those reasons, Defendant's motion predicated on Section 212(h) must be denied.

### 4. **Defendant Was Not Eligible for Voluntary Return**

Defendant argues that he should have been informed that he was eligible for a voluntary return to Mexico, rather than being deported. Defendant was **not** eligible for voluntary return, because he was a deportable aggravated felon who was not a person of good moral character. Therefore, failing to advise Defendant of a program that he was not eligible for did not deny due process.

8 U.S.C. 1229c provides for voluntary departure of an alien under certain circumstances:

> (b) At conclusion of proceedings
> (1) In general
> The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense if, at the conclusion of a proceeding under section 1229a of this title, the immigration judge enters an order granting voluntary departure in lieu of removal and finds that—
> (A) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229 (a) of this title;
> (B) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure;
> (C) the alien is not deportable under section 1227 (a)(2)(A)(iii) or section 1227 (a)(4) of this title; and
> (D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

Defendant cannot meet these requirements. First of all, he was not a person of good moral character, since he spent a significant portion of the five years prior to his deportation hearing in state prison for almost killing a person. Similarly, Defendant was deportable under section 1227(a)(2)(iii) as someone who had been convicted of an aggravated felony. Because of these reasons, Defendant was ineligible for voluntary departure.

### 5. **Defendant Cannot Establish Prejudice**

For the reasons discussed in section 3 above, Defendant cannot establish that he had plausible grounds for relief from his deportation order. Because of his crime of moral turpitude, combined with his complete lack of legal residency status in the United States, he was ineligible for any form of relief from the deportation order. Defendant cannot claim that 212(h) would apply, since he was an illegal alien who had been illegally residing in the United States and tried to end the life of a human being, making him an aggravated felon. Although Defendant attempts to conflate 212(c) relief with 212(h) relief, he was eligible for neither. The immigration judge did not need to inform Defendant about any forms of relief, since he was entitled to none under 8 U.S.C. § 1228(b). Defendant has not shown that

his removal would impose severe hardship on his United States citizen relatives, so he cannot show that any alleged error in the deportation proceedings prejudiced him.

### III

### UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Defendant. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

### IV

### MOTION TO COMPEL FINGERPRINT EXEMPLARS

As part of its case, the United States must prove that Defendant was previously deported from the United States. To prove this element, the United States anticipates calling a certified fingerprint examiner to testify that Defendant is the individual whose fingerprint appears on the warrants of

deportation and other deportation documents. A number of chain of custody witnesses could be eliminated, and judicial resources conserved, by permitting the Government's expert to take Defendant's fingerprints himself. The Defendant's fingerprints are not testimonial evidence. See Schmerber v. California, 384 U.S. 757 (1966). Further, using identifying physical characteristics, such as fingerprints, does not violate Defendant's Fifth Amendment rights against self-incrimination. United States v. DePalma, 414 F.2d 394, 397 (9th Cir. 1969); Woods v. United States, 397 F.2d 156 (9th Cir. 1968); see also, United States v. St. Onge, 676 F. Supp. 1041, 1043 (D. Mont. 1987). Accordingly, the Government requests that the Court order that Defendant make himself available for fingerprinting by the Government's fingerprint expert.

## LEAVE TO FILE FURTHER MOTIONS

The United States does not oppose Defendant's request for leave to file further motions, so long as such motions are based on discovery not yet received by Defendant.

## V

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's motions be denied and the United States' motion for reciprocal discovery be granted.

DATED: March 18, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*/s/ Christina M. McCall*

CHRISTINA M. McCALL
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JESUS ACEVES-INIESTRA,<br><br>　　　　　Defendant. | Case No. 08CR0361-LAB<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS, DISMISS INDICTMENT AND SUPPRESS STATEMENTS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

David Peterson, Esq.
Kris J. Kraus, Esq.
Federal Defenders, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 18, 2008.

　　　　　　　　　　　　　　　　　　　　　　　/s/ Christina M. McCall
　　　　　　　　　　　　　　　　　　　　　　　CHRISTINA M. McCALL